PHILLIPS, Circuit Judge,
dissenting.
I respectfully dissent. The majority concludes that the single Agreement to Arbitrate applies to both the attempted transaction on February 9, 2013 and the completed transaction on February 11, 2013, despite language suggesting otherwise in the Agreement to Arbitrate.
In conspicuous writing immediately above Mooneyham’s signature, the Agreement to Arbitrate proclaims that “THIS AGREEMENT IS INCORPORATED BY REFERENCE INTO THE RETAIL PURCHASE AGREEMENT.” App. 267 (emphasis added). A document incorporated by reference “ ‘becomes constructively a part of the writing,’ forming a single instrument.” Walker v. BuildDirect.com Technologies Inc., 349 P.3d 549, 553 (Okla. 2015) (quoting 11 Williston on Contracts § 30:25 (4th ed. 1999)). When Mooneyham signed the Agreement to Arbitrate on February 9, 2013, one Retail Purchase Agreement existed—the Retail Purchase Agreement dated the same day. But that Retail Purchase Agreement failed because Exeter rejected the proposed financing terms. That left no Retail Purchase Agreements to incorporate the Agreement to Arbitrate.[1]
On February 11, BRSI notified Mooney-ham that financing was disapproved and had him return to the dealership. Upon his returning, BRSI presented Mooneyham with a new Retail Purchase Agreement with less favorable terms. In the new agreement, Mooneyham’s monthly payments increased from about $500 to $516, the amount financed declined by $1,000, and the extended service plan shrunk from 72 months/85,000 miles to 36 months/36, 000 miles.
BRSI could have avoided this lawsuit by having Mooneyham sign another Agreement to Arbitrate (assuming he would still have signed despite the described less-favorable terms). But BRSI chose not to do so. Instead, BRSI forged ahead with the February 11, 2013 Retail Purchase Agreement, which did not incorporate the arbitration agreement.[2]
I don’t know why BRSI did not ask Mooneyham to sign an Agreement to Arbitrate when he signed the second purchase agreement. Perhaps it was careless, perhaps it was overconfident that the earlier Agreement to Arbitrate survived the failed transaction, or perhaps it was concerned that Mooneyham might not be in a mood to sign another arbitration agreement. But to cure its failure, BRSI would have us assume that Mooneyham would have signed a second arbitration agreement and hold him to it. I decline to do so and would affirm the district court’s decision.

. BRSI is a sophisticated business with skilled attorneys who easily could have worded this to include future retail purchase agreements to ease our interpretative task.

. At oral argument, BRSI s counsel agreed that some changes to a purchase agreement could necessitate a second Agreement to Arbitrate, but he disputed that those circumstances existed in this case, Oral Arg. 26:41-28:25.